# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **KRISTINE KAYE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:16-cv-02878 |
| ) | **Judge Aleta A. Trauger** |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

Plaintiff Kristine Kay brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act.

On May 31, 2018, the magistrate judge issued a Report and Recommendation ("R&R") (Doc. No. 14), recommending that the decision of the Social Security Administration ("SSA") be affirmed and that the plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 12) be denied. The plaintiff has filed timely Objections (Doc. No. 17), to which the SSA has responded (Doc. No. 18).

For the reasons discussed herein, the court finds that remand is required based on the SSA's failure to properly apply the treating physician rule and the magistrate judge's error as a matter of law in finding that failure to be harmless. The court will therefore reject the R&R, grant the Motion for Judgment insofar as it seeks remand, reverse the SSA's decision, and remand to the SSA for further consideration, pursuant to sentence four of 42 U.S.C. § 405(g).

**I.     Procedural History**

Plaintiff Kristine Kaye filed her application for DIB on March 12, 2013, alleging disability beginning on February 28, 2013. (Administrative Record ("AR") 195,[1] Doc. No. 10 Ex. D.) The application was denied initially (AR 129, Doc. No. 10 Ex. 1B) and on reconsideration (AR 13, Doc. No. 10 Ex. 4B). After a hearing on January 26, 2015, Administrative Law Judge ("ALJ") Renee S. Andrews-Turner issued a decision unfavorable to the plaintiff on August 27, 2015. (AR 39–52.)

The ALJ found that Kaye last met the insured status requirements of Title II of the Social Security Act on December 31, 2014 and that she had not engaged in substantial gainful activity during the period from her alleged onset date of February 28, 2013 through her last-insured date of December 31, 2014. (AR 44.) The ALJ also accepted as a factual matter that Kaye suffers from severe impairments, including "adjustment disorder, anxiety disorder, multiple sclerosis (MS), and degenerative disc disease of the thoracic and lumbar spine." (AR 44.) The ALJ determined that the plaintiff has non-severe impairments as well, including neurogenic bladder, lichen sclerosus, and fecal incontinence, but she found that the plaintiff did not allege any physical impairments, alone or in combination, that meet or equal the severity of a listed physical impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 45.)

The ALJ also found that the plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 or 12.06. The ALJ determined that the plaintiff has mild restriction in activities of daily living; no difficulties in social functioning; moderate difficulties with regard to concentration, persistence, and pace; and has never experienced any episodes of decompensation of extended duration. (AR 45–46.)

---

[1] Page number references to the administrative record are consistent with the Bates stamp number at the lower right corner of each page.

In light of Kaye's physical and mental impairments, the ALJ determined that the plaintiff has the residual functional capacity ("RFC") to perform sedentary work with some limitations. More specifically, the ALJ found that she has the ability to lift and carry ten pounds occasionally; stand and walk for two hours each during an eight-hour workday and sit for six hours during an eight-hour workday; occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and frequently reach, handle, finger, feel, push, and pull with the upper extremities, but she can but never climb ladders or scaffolds. She is limited to occasional exposure to unprotected heights, moving mechanical parts, humidity, wetness, dust, odors, fumes, pulmonary irritants, and vibration. She can never operate a motor vehicle or withstand exposure to extreme heat. She can understand, remember, and carry out simple and detailed instructions and maintain concentration, persistence, and pace for two hours at a time during an eight-hour workday. (AR 46.)

The ALJ found that the plaintiff has past relevant work as an office manager at the light exertional level, semi-skilled, and that she is unable to perform any past relevant work. Nonetheless, based on the RFC and the testimony of a qualified vocational expert ("VE") at the hearing, and considering the plaintiff's age, education, and work experience, the ALJ ultimately concluded that there were jobs that existed in significant numbers in the national economy that the plaintiff could have performed during the disability period, including the jobs of document preparer, call out operator, and charge accounts clerk. (AR 51.) The ALJ therefore concluded that the plaintiff was not disabled during the relevant time frame.

The Appeals Council denied review on September 17, 2016 (AR 1), making the ALJ's decision the final Agency decision.

The plaintiff filed her Complaint initiating this action on November 14, 2016. (Doc. No.

1.) The SSA filed a timely Answer (Doc. No. 9), denying liability, and a complete copy of the Administrative Record (Doc. No. 10). On March 27, 2017, the plaintiff filed her Motion for Judgment on the Administrative Record and supporting Memorandum. (Doc. Nos. 12, 12-1.) The SSA filed a timely Response. (Doc. No. 13.) On May 31, 2018, the magistrate judge issued her R&R (Doc. No. 14), recommending that the plaintiff's motion be denied and that the SSA's decision be affirmed.

Now before the court are the plaintiff's Objections to the R&R (Doc. No. 17), to which the SSA has responded (Doc. No. 18). Although the plaintiff articulates several objections, they essentially may be reduced to one, which the court finds to be meritorious: that the ALJ failed to properly apply the agency's regulations governing the consideration of a treating physician's opinion.

**II.     Standard of Review**

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(1)(C); 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001); *Massey v. City of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993). Objections must be specific; a general objection to the R&R is not sufficient and may result in waiver of further review. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). In conducting its review of the objections, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In Social Security cases under Title II or Title XIV, the Commissioner determines whether a claimant is disabled within the meaning of the Social Security Act and, as such,

entitled to benefits. 42 U.S.C. §§ 1383(c), 405(h). The court's review of the decision of an ALJ is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see* 42 U.S.C. § 405 (g) (2012) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal citations omitted).

In addition, an agency's violation of its own procedural rules requires reversal either upon a showing that "the claimant has been prejudiced on the merits *or deprived of substantial rights because of the agency's procedural lapses.*" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (citation omitted; emphasis in original). A regulation "intended primarily to confer important procedural benefits upon individuals" "bestows a 'substantial right' on parties before the agency" and must be strictly followed. *Id.* (citations omitted). As discussed below, the so-called treating physician rule (or treating source rule), embodied in 20 C.F.R. § 404.1527(d)(2), confers a substantial right, and an ALJ's failure to comply with it generally requires reversal. *Wilson*, 378 F.3d at 548.

### III. Analysis

#### A. *The Treating Physician Rule*

"The Commissioner has elected to impose certain standards on the treatment of medical source evidence." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)). Medical opinions are to be weighed by the

process set forth in 20 C.F.R. § 404.1527(c). Generally, a treating-source opinion must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ finds, based on these criteria, that a treating-source opinion is not entitled to controlling weight, then the ALJ must weigh the opinion based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and supported by relevant evidence, *id.* § 404.1527(c)(2)–(6). Even if the treating physician's opinion is not given controlling weight, "there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference." *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Social Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)).

If the treating source's opinion is not given controlling weight, the ALJ must give "good reasons" for discounting the amount of weight given. 20 C.F.R. § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544. Because the reason-giving requirement exists to "ensur[e] that each denied claimant receives fair process," the Sixth Circuit has repeatedly held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given the opinions

"denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Blakley*, 581 F.3d at 407 (quoting *Rogers*, 486 F.3d at 243).[2]

### B. The ALJ's Rejection of the Treating Physician's Opinion

Dr. Deborah Beyer is indisputably a "treating source," as she appears to have begun treating plaintiff as early as November 2001, saw her at least intermittently from that date through 2003, and regularly from September 2011 through 2015. (*See* AR 10–19, 318–94, 438–70.) Dr. Beyer completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on January 22, 2015.[3] (AR 498–501; *see also* AR 16–18 (medical treatment note from the same day).) In the Medical Source Statement, Dr. Beyer opined that the plaintiff had significant physical limitations as a result of "complications from MS." (AR 499.) The medical treatment note for the same day indicates that the plaintiff was "upset because her [diagnosis] is progressing." (AR 16.) She reported increasing difficulty with her gait; pain in hips and legs; muscle spasms in both legs; chronic fatigue; chronic constipation with loss of motility and rectal prolapse; balance problems, with dizziness upon bending over; discomfort at night and difficulty lying still for long because of leg spasms. The physical examination note states: "WDWNWF

---

[2] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. *See also* 82 Fed. Reg. 15132 (March 27, 2017) (amending and correcting the final rules published at 82 Fed. Reg. 5844). The altered regulations went into effect on March 27, 2017, and specifically apply only to the evaluation of opinion evidence for claims filed after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html. They therefore do not apply in this case.

[3] The magistrate judge's rejection of the plaintiff's argument regarding the treating source rule relied, in part, on a finding that Dr. Beyer's Medical Source Statement appeared to be dated January 22, 2012, before the alleged onset of disability. (*See* Doc. No. 14, at 26 (citing AR 501).) Although the court agrees that the date next to Dr. Beyer's signature looks like "1/22/12" rather than "1/22/15," the date of the fax stamp and the context of the Statement, particularly its reference to the MS diagnosis and its consistency with the treatment note from January 22, 2015 (AR 16), make it clear that the Medical Source Statement was completed on January 22, 2015.

[well-developed well-nourished white female] appears uncomfortable; cannot sit for long due to leg spasms; paces in office; also cannot stand long as gets weak." (AR 18.)

In addressing Dr. Beyer's opinion, the ALJ stated as follows:

Medical opinions were offered by DDS state agency consultants along with consultative examiners, Ms. Alice Garland and Dr. Deborah Beyer (1A/3A/5A/7F). Dr. Steven Goldstein offered a Medical Source Statement (9F/10F).

. . .

Dr. Beyer reported that the claimant could occasionally and frequently lift/carry less than 10 pounds; stand/walk less than 2 hours in an 8-hour workday; sit less than 6 hours in an 8 hour workday; occasionally (limited) finger and feel; never climb ramps/stairs/ladders/ropes/scaffolds, balance, kneel, crouch, crawl, stoop. She indicated the claimant should limit pushing/pulling in the lower extremities; exposure to temperature extremes, dust, humidity, wetness, hazards, fumes, odors, chemicals, and gases. Dr. Beyer provided the rationale that explained the claimant's multiple complications from MS made it difficult to impossible for her to manage work tasks. She further explained that the claimant was severely limited by chronic fatigue, muscle spasms, urinary incontinence, and gait instability, which increased her risk for falls. Dr. Beyer reported the plaintiff's pain level was extreme and required constant treatment. She stated the claimant's immune system was compromised due to MS and required limited exposure to irritants (7F).

. . .

Other medical evidence in the file did not corroborate Dr. Beyer's opinion. For example, Dr. Beyer stated the claimant was limited to less than 2 hours of standing/walking. However, evidence noted during several doctor's visits the claimant had a normal gait and could walk 25 feet within 5–8 seconds (5F/6F). As a result, Dr. Beyer's opinion was given little weight (7F). Therefore, the undersigned concludes that the claimant has the capacity for work activity consistent with the residual functional capacity outlined above.

(AR 48–50.)

The ALJ did not acknowledge at any point that Dr. Beyer was a treating source, and she did not summarize any of Dr. Beyer's medical treatment notes or otherwise imply that she understood that Dr. Beyer was a treating physician. She also did not expressly state that she was

*not* giving Dr. Beyer's opinion controlling weight. The only reason identified for giving Dr. Beyer's opinion "little weight" is that her opinion is not corroborated by notations elsewhere in the record that the plaintiff could walk 25 feet within 5 to 8 seconds. The court finds, as did the Sixth Circuit in *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004), that, although substantial evidence otherwise supports the ALJ's decision, reversal is required because the agency failed to follow the treating physician rule.

As previously indicated, the ALJ must give a treating source's opinion controlling weight if she finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)). Then, if the treating source opinion is *not* accorded controlling weight, the ALJ must consider such factors as the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source, to determine what weight to give the opinion. *Id.*

In this case, it is clear that the ALJ did not accord Dr. Beyer's opinion "controlling weight." However, because the ALJ apparently failed to recognize Dr. Beyer as a treating source and instead seemed to believe that she was merely a consulting examiner, it is not at all clear whether she considered the factors identified in 20 C.F.R. § 404.1527(c)(2), specifically the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, or the doctor's area of specialization. It is true that the regulations do not require an ALJ to address each of the § 404.1527(c)(2) factors, so long as she gives good reasons for the weight accorded the treating source's opinion. *See Francis v. Comm'r of Soc. Sec*, 414 F. App'x 802, 804 (6th Cir. 2011) (noting that the regulations expressly require only that the ALJ's

decision include "'good reasons . . . for the weight . . . give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis" (quoting 20 C.F.R. § 404.1527(c)(2)). That is, where the record establishes that the ALJ *understood* that a particular practitioner was a treating source *and* the ALJ provides good reasons for rejecting her opinion, the court may presume that the ALJ considered the relevant factors, even if they are not specifically referenced in the decision. No such presumption arises here, however, where the ALJ failed to recognize that Dr. Beyer was the plaintiff's long-time treating physician and not merely a consulting examiner. In short, the record establishes that the ALJ did not comply with § 404.1527(c)(2).

Moreover, even if she had recognized Dr. Beyer as a treating physician, the ALJ's cursory reference to notes from several office visits indicating that the plaintiff could walk with a normal gait and at a normal pace for 25 feet does not qualify as "good reasons." The ALJ's summary dismissal of Dr. Beyer's opinion does not suggest that she took into account the supportability of the opinion generally or its consistency with the record as a whole. In particular, the court notes that an ability to walk 25 feet with a normal gait and at a normal pace is not necessarily inconsistent with Dr. Beyer's opinion, because merely being able to walk for 25 feet says little about whether the individual can sustain that pace for a greater distance or stand for any length of time, and nothing about her ability to perform other work-related tasks.

Nor can the ALJ's failure to properly apply the treating physician rule be dismissed as harmless error, contrary to the magistrate judge's recommendation. As the Sixth Circuit has recognized:

> [A] federal agency is obliged to abide by the regulations it promulgates. An agency's failure to follow its own regulations tends to cause unjust discrimination and deny adequate notice and consequently may result in a violation of an individual's constitutional right to due process. Where a prescribed procedure is intended to protect the interests of a party before an agency, even though generous beyond the requirements that bind such agency, that procedure must be

    scrupulously observed.

*Wilson*, 378 F.3d at 545 (quoting *Sameena, Inc. v. U.S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998) (internal citations and quotation marks omitted)). In *Wilson*, the Sixth Circuit confirmed that the regulation in question here "bestows a 'substantial right' on parties before the agency" and, consequently, is one that must be scrupulously observed. *Id.* at 547. Thus, the court has signaled that it will not "hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" and "will continue remanding" when faced with ALJ opinions "that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Id.* (citation omitted).

## IV. Conclusion

For the foregoing reasons, the court will reject the R&R, grant the plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 18), and remand to the SSA for further consideration in accordance with this opinion. An appropriate order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge